UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MAHFOOZ AHMAD,                                  :
               Plaintiff,
                                        :       OPINION AND ORDER
           -against-                            20 Civ. 4507 (JMF) (GWG)
                                        :
COLIN DAY, et al.,
                                        :
               Defendants.
                                        :
-------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

      Pro se plaintiff Mahfooz Ahmad brought this case alleging claims relating to his employment and the alleged theft of his intellectual property. See First Amended Complaint, filed Aug. 25, 2021 (Docket # 76) ("FAC"). Following a partial dismissal of his first amended complaint, Ahmad moves for leave to file a new complaint.[1] In the proposed second amended complaint ("PSAC"), Ahmad names as defendants iCIMS Inc. ("iCIMS") and associated individuals Colin Day and Courtney Dutter (collectively, the "iCIMS defendants"); Beacon Hill Staffing Group ("Beacon"); naviHealth Inc. ("naviHealth") and Clay Richards; Vista Equity Partners ("Vista"); Susquehanna Growth Equity ("Susquehanna"); and Comcast Corporation ("Comcast"). See PSAC. For the reasons that follow, the motion for leave to amend is granted in part and denied in part.

---

[1] See Notice of Motion for Proposed Amended Complaint, filed July 13, 2022 (Docket # 168) ("Pl. Mot."); Memorandum in Support of Motion for Proposed Amended Complaint, filed July 13, 2022 (Docket # 168) ("Pl. Mem."); Proposed Second Amended Complaint, attached to Pl. Mem. (Docket # 168-1) ("PSAC"); Letter, filed July 25, 2022 (Docket # 172) ("July 25 Letter"); Memorandum of Law in Opposition, filed July 27, 2022 (Docket # 173) ("iCIMS Opp."); Memorandum of Law in Opposition, filed July 27, 2022 (Docket # 174) ("naviHealth Opp."); Memorandum of Law in Opposition, filed July 27, 2022 (Docket # 175) ("Vista Opp."); Memorandum of Law in Opposition, filed July 27, 2022 (Docket # 176) ("Beacon Opp."); Reply Memorandum in Support, filed Aug. 24, 2022 (Docket # 183) ("Pl. Reply"); Letter, filed Sept. 13, 2022 (Docket # 184) ("September 13 Letter").

I.     BACKGROUND

    A.     Allegations in the Proposed Amended Complaint

The proposed amended complaint makes the following allegations, which we assume to be true for purposes of ruling on this motion to amend.

Ahmad worked in a contract position for NBCUniversal beginning September 30, 2013. PSAC ¶ 3;[2] July 25 Letter at 2. In February 2014, Ahmad launched a social networking website called "Keepup," and, a month later, he applied for funding from an investment firm called DreamIt Ventures, a New York state based firm backed by Comcast. PSAC ¶¶ 4-5. Ahmad found out later that year that two New York state entrepreneurs, Angel Davis and Lauren Washington, won $250,000 in a startup competition for a social networking application also named "Keepup." PSAC ¶ 6. Davis, Washington, "and their affiliates" trademarked Keepup with the U.S. Patent and Trademark Office ("USPTO"). PSAC ¶ 6. Ahmad sent them a cease-and-desist letter, and in December 2015, he filed a request to extend time to oppose this trademark with the USPTO, which denied the request. PSAC ¶ 6.

Ahmad later applied for a job at iCIMS and was hired. PSAC ¶¶ 7-10. iCIMS hired Ahmad at Comcast's order, "so that iCIMS and its affiliates could easily and closely monitor Plaintiff." PSAC ¶ 9. Ahmad began working for iCIMS on February 1, 2016. PSAC ¶ 10. Although Ahmad had "great work performance" while at iCIMS, he received worse pay and more burdensome responsibilities than his colleagues. PSAC ¶¶ 10, 12. A majority of iCIMS employees "were of white race." PSAC ¶ 10. iCIMS forced Ahmad to work through weekends

---

[2] The PSAC restarts paragraph numbering at various points. Our citations to paragraph numbers are to the paragraphs in the section entitled "Amended Complaint," beginning on page 10 of the document. Where we cite to other portions of the PSAC, we use page numbers followed by a parenthetical indicating the paragraph number.

and occasionally well over 60 hours a week without requisite pay.  PSAC ¶¶ 14, 17.  Even though iCIMS was aware that Ahmad is Muslim and observes a compulsory Friday prayer, his managers scheduled calls during Friday prayers and spoke to him harshly when he explained why he was rescheduling a Friday call.  PSAC ¶ 18.  On some occasions, iCIMS would order food for employees, but did not order kosher or halal food that Ahmad could eat, consistent with his religious practices.  PSAC ¶ 13.

On May 30, 2018, Ahmad submitted a "pdf pitch deck business plan" of "novel intellectual property" named "Jobtrail" to the CEO of iCIMS, Colin Day, as an investment opportunity.  PSAC ¶ 19.  On June 5, 6, and 7, 2018, iCIMS scheduled meetings to learn and review Jobtrail's "pre[-]release platform."  PSAC ¶ 20.  Having "fully understood Jobtrail's trade secrets, business model, application and use case of the novel intellectual property," iCIMS then terminated Ahmad's employment on June 7, 2018, "acting in discrimination."  PSAC ¶¶ 21-22.  The complaint alleges that iCIMS "acted deceptively and illegally to acquire intellectual property that Plaintiff had been creating even prior to joining iCIMS as an employee."  PSAC ¶ 27.

On August 17, 2018, about two months after Ahmad's termination from iCIMS, Vista invested $1.2 billion in iCIMS.  PSAC ¶ 32.

In June 2019, Beacon contacted Ahmad about a job opportunity, initially stating that Ahmad would be a "contractual employee" of Beacon and would work with naviHealth to implement iCIMS' software.  PSAC ¶ 35.  After Ahmad expressed "great hesitance," Beacon and naviHealth stated that naviHealth was seeking someone full time for a role as "Senior Configuration Engineer."  Id.  Beacon and naviHealth said "this role will be made direct hired full time with naviHealth and that will happen after Plaintiff initiates the contract."  Id.  At some point in July 2019, Ahmad accepted the role Beacon offered, induced by "false statements of [a]

promising career with naviHealth." PSAC ¶ 36. As part of this acceptance, Ahmad also signed the first and last page of the agreements titled "Invention Assignment Agreement" and "Business Associate Addendum." Id. Despite a "remote employment understanding," Beacon and naviHealth demanded Ahmad travel to Brentwood, Tennessee, which cost him time and money. PSAC ¶ 40.

During his employment, Beacon and naviHealth "improperly" reported Ahmad's wages as earnings in Tennessee. PSAC ¶ 41. Because of this, Ahmad was not able to qualify or was delayed in qualifying for unemployment benefits during the pandemic, "resulting in financial harm in New York." Id.

Around June 2020, iCIMS, "as backed by" both Vista and Susquehanna, was "able to engineer and reverse-engineer Plaintiff[']s novel intellectual[] property and began to offer it as services to its clients." PSAC ¶ 44.

The complaint also contains (1) allegations claiming various conspiracies among the defendants to harm plaintiff; (2) allegations that some action was taken by the "defendants" without specifying which defendants are at issue or the role of each defendant; and (3) allegations that cite a statute or legal principles that are conclusory insofar as they do not detail the specific acts demonstrating that the defendants violated those laws or legal principles. See, e.g., PSAC ¶¶ 25, 29, 33-34, 37-39, 43-46, 49-51, 54-59, 61-62. For the reasons explained below, we do not consider these allegations.[3]

---

[3] We also ignore an allegation that makes references to other filings in this case, see PSAC ¶ 52, as such an allegation is inconsistent with the requirements of Fed. R. Civ. P. 10, which provides pleadings shall refer to paragraphs of an earlier pleading, not to memoranda of law.

4

B.     Procedural History

Ahmad filed his original complaint in this action on June 11, 2020, naming the iCIMS defendants and describing for the most part an employment discrimination claim. Complaint, filed June 11, 2020 (Docket # 2) ("Compl."). The iCIMS defendants, originally the only defendants in the case, moved to compel arbitration shortly thereafter on the ground that the claim in the complaint arose out of confidentiality agreement Ahmad had executed with iCIMS. See Ahmad v. Day, 556 F. Supp. 3d 214, 215 (S.D.N.Y. 2021). The Court denied the motion to compel arbitration on the ground that the complaint made claims of employment discrimination and did not arise out of the confidentiality agreement. Id.

Ahmad filed the FAC on August 25, 2021, adding naviHealth, Beacon Hill, and Vista as defendants and adding intellectual property claims. See FAC. The iCIMS defendants answered the FAC on September 15, 2021. Answer, filed Sept. 15, 2021 (Docket # 78). naviHealth, Beacon, and Vista each filed a motion to dismiss. See Motion to Dismiss, filed Jan. 14, 2022 (Docket # 104); Motion to Dismiss, filed Jan. 18, 2022 (Docket # 109); Motion to Dismiss, filed Jan. 18, 2022 (Docket # 117). The Court granted naviHealth and Beacon's motions on the ground that plaintiff lacked standing to sue them because he had shown no injury traceable to their conduct and granted Vista's motion to dismiss for lack of personal jurisdiction. See Ahmad v. Day, 2022 WL 1814905, at *5-6 (S.D.N.Y. June 2, 2022), adopted, 2022 WL 2452231 (S.D.N.Y. July 6, 2022). Ahmad was given permission to move to file an amended complaint. See Ahmad, 2022 WL 2452231, at *3.

Ahmad filed the instant motion on July 13, 2022. See Pl. Mem. Attached to the motion is a proposed amended complaint that realleges claims against the previous defendants and adds as new defendants Susquehanna, Clay Richards (who is associated with naviHealth), and

Comcast.  PSAC at 1.  The proposed complaint lists a host of federal and state statutes and common law claims.  See PSAC at 5-8.  Some relate to employment discrimination or mistreatment during his employment, and others appear to relate to his claims of theft of his intellectual property.  Id.

Additionally, Ahmad filed documents in which he seeks to challenge the constitutionality of the Federal Arbitration Act.  See Notice of Constitutional Question, filed July 13, 2022 (Docket # 167) ("Not."); Supplement to ECF Docket # 167, filed July 18, 2022 (Docket # 171) ("Supp. to Not.").

## II. LAW GOVERNING MOTIONS FOR LEAVE TO AMEND

Rule 15(a) provides that a "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The policy behind this rule is that "[l]iberal amendment promotes judicial economy by making it possible to dispose of all contentions between parties in one lawsuit."  Bilt-Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc., 1990 WL 129970, at *1 (E.D.N.Y. Aug. 24, 1990) (citing JennAir Prods. v. Penn Ventilator, Inc., 283 F. Supp. 591, 594 (E.D. Pa. 1968)).  The decision to grant or deny leave to amend under Rule 15(a)(2) is "within the discretion of the trial court."  See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971) (citation omitted).  The court may deny leave to amend for "good reason," which normally involves an analysis of the four factors articulated in Foman v. Davis, 371 U.S. 178, 182 (1962): undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party.  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citing Foman, 371 U.S. at 182).

"Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil

6

Procedure." Empire Merchs., LLC v. Reliable Churchill LLLP, 902 F.3d 132, 139 (2d Cir. 2018) (citations omitted).

III.   DISCUSSION

In reviewing the complaint, we are mindful that "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted); accord McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir.1999) (A pro se party's pleadings should be construed liberally and interpreted "to raise the strongest arguments that they suggest[.]") (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994)).  However, even pro se pleadings must contain factual allegations that "raise a right to relief above the speculative level." Dawkins v. Gonyea, 646 F.Supp.2d 594, 603 (S.D.N.Y.2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545, (2007)).

We address each defendant or set of defendants in turn.

A.   Vista

The Court previously granted Vista's motion to dismiss the First Amended Complaint based on lack of personal jurisdiction. Ahmad, 2022 WL 1814905, at *5-6. The Court found that the FAC did not establish that Vista "committed a tortious act merely by investing money in iCIMS" and did not meet the requirements for specific jurisdiction under New York law. Ahmad, 2022 WL 1814905, at *6, adopted, 2022 WL 2452231, at *2.

In examining the proposed amended complaint, we ignore the paragraphs that make allegations against all or some defendants in an undifferentiated manner as a group, including those with conclusory allegations of conspiracy. See, e.g., Appalachian Enterprises, Inc. v.

ePayment Sols., Ltd., 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004) ("A plaintiff fails to satisfy rule 8, where the complaint lumps all the defendants together and fails to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong.") (citations and internal punctuation omitted); Stutts v. De Dietrich Grp., 2006 WL 1867060, at *14 (E.D.N.Y. June 30, 2006) ("Conspiracy claims premised upon conclusory, vague or general allegations will not withstand a motion to dismiss.") (citation and internal punctuation omitted). We also ignore conclusory allegations regarding Vista's presence in New York. See PSAC at 9 (¶ 7) (alleging that all defendants have "significant presence in the Sate [sic] of New York" and "generate a significant amount of revenue and have large presence in the state.").

The only specific allegations regarding Vista are that on August 17, 2018, it "invested hundreds of millions of dollars (approximately $1.2 Billion) in iCIMS, . . . two months after Plaintiff's unlawful termination." PSAC ¶ 32. The complaint alleges that Vista sold "close to half its stake in iCIMS" in June 2022. PSAC ¶¶ 47, 53.

Nothing else in the complaint describes any specific acts by Vista. While the complaint contains a number of allegations lumping Vista in with various other defendants, see e.g., ¶¶ 44-49, no description is given of any acts undertaken by Vista itself. The claims that the defendants as a group harmed plaintiff are entirely conclusory.

As the Court noted previously, Ahmad, 2022 WL 1814905, at *5 n.8, general jurisdiction over a nonresident corporation based on the corporation's in-state presence is constitutional only if the corporation's in-state contacts "are so continuous and systematic as to render it essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 139 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)) (punctuation

omitted). Ahmad's proposed complaint contains no non-conclusory allegations showing such contacts, and thus subjecting Vista to general personal jurisdiction would violate the Due Process Clause. See Ahmad, 2022 WL 1814905, at *5 n.8.

As to specific jurisdiction, which in New York is codified at C.P.L.R. § 302(a), the proposed complaint does not cure the defects of the original complaint. Section 302(a) authorizes the exercise of specific personal jurisdiction over a nonresident defendant in four circumstances: (1) if the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state," id. § 302(a)(1); (2) if the defendant "commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act," id. § 302(a)(2); (3) if the defendant "commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce," id. § 302(a)(3); or (4) if the defendant "owns, uses or possesses any real property situated within the state," id. § 302(a)(4). There are no non-conclusory allegations that show that Vista engaged in any of these acts. The only specific allegation about Vista's activity is a business transaction with iCIMS two months after Ahmad's termination. That transaction has no nexus to whatever harm Ahmad is alleging (or any other claim in the proposed complaint) and thus cannot satisfy §302(a)(1). See, e.g., Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006) ("A connection that is 'merely coincidental' is insufficient to support jurisdiction.") (citation omitted). As to the remaining allegations referring to defendants as a

group, they are all conclusory, and "a plaintiff may not rely on 'conclusory non-fact-specific jurisdictional allegations' to overcome a motion to dismiss[.]" Doe v. Delaware State Police, 939 F. Supp. 2d 313, 321 (S.D.N.Y. 2013) (quoting Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998)).  Accordingly, the Court will not grant leave to amend to include Vista as a defendant.

   B.  Defendants Beacon Hill and naviHealth

     1.  Intellectual Property Claims

  The Court previously granted the motion to dismiss claims against naviHealth and Beacon because of a lack of standing.  Ahmad, 2022 WL 1814905, at *4-5, adopted, 2022 WL 2452231, at *2-3.  The PSAC appears to assert claims about the theft of intellectual property by iCIMS, roping naviHealth and Beacon into these claims in an entirely conclusory manner, again without showing how their actions had any relation to those claims.  See, e.g., PSAC ¶ 33.  Thus, plaintiff lacks standing to sue Beacon and naviHealth to remedy any harm caused to him by iCIMS, given that he continues to show no connection between the actions of Beacon and naviHealth and any allegedly improper action by iCIMS.  See, e.g., Rothstein v. UBS AG, 708 F.3d 82, 91 (2d Cir. 2013) (to satisfy standing requirement, plaintiff must "demonstrate a causal nexus between the defendant's conduct and the injury") (citation omitted).

     2.  Employment-Related Allegations

  The proposed complaint includes entirely new allegations regarding plaintiff's employment that name naviHealth and Beacon Hill.  We discern two separate factual circumstances.  First, plaintiff alleges that Beacon and/or naviHealth did not fulfill a promise to provide him with a "full time career" and to be hired by naviHealth.  PSAC ¶ 35.  Second, the proposed complaint alleges that Beacon and naviHealth "improperly reported Plaintiff[']s wages

10

in the State of Tennessee" and that this misreporting meant he later was not "able to qualify for Regular Unemployment Benefits" or was otherwise delayed in receiving benefits. PSAC ¶ 41.

In its opposition, Beacon Hill disputes making any such promise to Ahmad and cites to emails and documents Ahmad previously placed in the record along with language from their employment contract in an apparent effort to argue that the motion to amend would be futile. Beacon Opp. at 18-19. naviHealth similarly points to materials outside the record to refute Ahmad's allegations. naviHealth Opp. at 5 n.2. But materials outside the pleadings are not properly considered on a motion to amend, see Kiarie v. Dumbstruck, Inc., 473 F. Supp. 3d 350, 355-56 (S.D.N.Y. 2020). As one court has noted,

> the fact that futility may sometimes constitute a reason for denial of a motion to amend is not a general invitation to explore the merits of novel proposed claims or to raise defenses that require analysis of matters outside the pleadings. The futility defense to a motion to amend is not, in short, a substitute for a motion to dismiss or a motion for summary judgment.

Livingston v. Trustco Bank, 2021 WL 6199655, at *2 (N.D.N.Y. Apr. 23, 2021) (citation omitted). Accordingly, we consider only the allegations in the complaint.

With respect to the claim made that plaintiff was falsely given the "promise of [a] full time career," PSAC ¶ 35, if we were to construe this claim as one of fraud, it plainly does not satisfy the pleading standards of Fed. R. Civ. P. 9(b) inasmuch as Ahmad's allegations "fail[] to state with particularity the circumstances constituting fraud" Indeed, the circumstances of the alleged promise are utterly garbled and no particular speaker or statement is identified. See PSAC ¶ 35. To the extent the proposed amended complaint could be construed as attempting to state a breach of contract claim, it fails because it is does not allege with any specificity what the actual promise was, who made the promise, and in what form it was made. See, e.g., Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002) ("a plaintiff must identify the

11

specific provision of the contract that was breached as a result of the acts at issue"), aff'd, 65 F. App'x. 736 (2d Cir. 2003); Sud v. Sud, 211 A.D.2d 423, 424 (1st Dep't 1995) (A breach of contract claim is "properly dismissed" where plaintiff fails "to allege, in nonconclusory language, as required, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated.").

The other employment-related claim is that Beacon and naviHealth "improperly reported Plaintiff[']s wages in the State of Tennessee" and that this misreporting meant he later was not "able to qualify for Regular Unemployment Benefits" or was otherwise delayed in receiving benefits. PSAC ¶ 41. The proposed complaint, however, does not explain why or how naviHealth would be responsible for the misreporting. According to the proposed complaint, Ahmad accepted a job offer from Beacon for a project at naviHealth, and there is no factual allegation that he worked for naviHealth. PSAC ¶¶ 35-36. Thus, the proposed complaint does not show that Ahmad has standing to assert this claim with respect to naviHealth because he has not shown how naviHealth caused the alleged injury.

As for the claim with respect to Beacon, Ahmad's allegations are meager and vague. There is an unclear reference to a "remote employment understanding," PSAC ¶ 40, with no specifics as to the basis for this "understanding." Additionally, Ahmad's factual allegations concede that the work was at a Tennessee-based business and that he repeatedly traveled to Tennessee for this work. PSAC ¶ 40. More importantly, Ahmad has not alleged how his wages were misreported, and it is unclear what statutory or common law claim he would have against Beacon. Whatever supposed right this claim draws from, the complaint does not provide allegations that show the claim could survive a motion to dismiss.

The proposed complaint also alleges repeatedly that different defendants alone or in tandem breached a fiduciary responsibility owed to Ahmad. PSAC ¶¶ 38, 49, 56. Putting aside the conclusory nature of the allegations, a claim for breach of fiduciary duty requires "the existence of a fiduciary relationship[.]" Yukos Cap. S.A.R.L. v. Feldman, 977 F.3d 216, 241 (2d Cir. 2020) (quoting United States Fire Ins. Co. v. Raia, 94, A.D.3d 749 (2d Dep't 2012)). A fiduciary relationship is a specific arrangement grounded in trust and confidence, which may be express or implied. N. Shipping Funds I, LLC v. Icon Cap. Corp., 921 F. Supp. 2d 94, 104-105 (S.D.N.Y. 2013). Ahmad has alleged no facts to show the existence of a fiduciary relationship with naviHealth or Beacon. At times, he asserts instead that employers owe such a duty to their employees. See, e.g., PSAC ¶ 38. But, in fact, case law holds otherwise. See, e.g., Kavitz v. Int'l Bus. Machines Corp., 2010 WL 11507447, at *10 (S.D.N.Y. Aug. 27, 2010), aff'd, 458 F. App'x 18 (2d Cir. 2012) ("[T]here is no fiduciary relationship between an employee and his employer."); BGC Partners, Inc. v. Avison Young (Canada) Inc., 160 A.D.3d 407, 407-08 (1st Dep't 2018) ("[N]o fiduciary relationship arises from an employment relationship[.]"). Thus, the complaint does not state a claim against naviHealth and Beacon based on breach of fiduciary duty.

Finally, while neither party has raised it, we are not convinced that there is subject matter jurisdiction over any claims against naviHealth and Beacon. The Court will not list the many federal statutes listed in the complaint, see Compl. at 5-8, as it is enough to say there are no factual allegations in the complaint against naviHealth or Beacon that fit within any of these federal statutes. With the federal claims gone from the complaint, there is no indication that the Court has subject matter jurisdiction over any state law claims inasmuch as there are no non-

conclusory allegations (or indeed any allegations) that show the jurisdictional amount in 28 U.S.C. § 1332 has been satisfied with respect to any employment-related claims.

3. Clay Richards

The proposed complaint would add Clay Richards as a defendant to the case. Id. at 4. While it appears that Clay Richards is associated with naviHealth, see PSAC at 3-4 (showing same address for Richards as naviHealth),[4] the only reference the proposed complaint makes to Richards specifically is that "Defendants collectively including Clay Richards, conspired to create an illegal plan of a misrepresented contract." PSAC ¶¶ 34. Such a vague and conclusory allegation of a conspiracy is insufficient to state a claim against Richards.

\* \* \*

For the above reasons, the motion to amend as to Beacon, naviHealth and Clay Richards is denied.

C.    The iCIMS Defendants

The original complaint and FAC contained claims against the iCIMS defendants for employment discrimination. See Compl. at 5; FAC 9-11. The new complaint adds a number of other claims relating to employment discrimination and intellectual property. See, e.g., PSAC ¶¶ 7-38.

The iCIMS defendants first argue that the entire proposed amended complaint as it concerns them is improper because the Court in its July 6, 2022 Order did not permit Ahmad to seek leave to amend with respect to the iCIMS defendants. iCIMS Opp. at 2-3; see also Ahmad, 2022 WL 2452231, at *3. We disagree that Ahmad is barred from making a motion to amend.

---

[4] In its opposition memorandum, naviHealth identified Richards as the former CEO of naviHealth. naviHealth Opp. at 6.

While the rulings in the July 6, 2022 Order are certainly the law of the case, its grant of permission to file a leave to amend does not speak to any future motion to amend with respect to the iCIMS defendants. As iCIMS itself recognizes, iCIMS Opp. at 2, Fed. R. Civ. P. 15(a)(2) allows a party to seek leave to amend. iCIMS selectively quotes from that rule to omit the portion that states that leave to amend should be "freely" given when "justice so requires." In a perhaps related argument, iCIMS argues that the new allegations in the complaint "should have been included in either [Ahmad's] Original or First Amended complaint" and that there is some burden in responding to allegations two years after the filing of the original complaint. Id. at 5. But iCIMS makes no effort to show any prejudice resulting from the new allegations, and it is settled that in the absence of prejudice or bad faith, undue delay is not in itself a basis to reject a motion to amend. See State Tchrs. Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981); accord Contrera v. Langer, 314 F. Supp. 3d 562, 575 (S.D.N.Y. 2018).

iCIMS also argues that the complaint violates Rule 8 of the Federal Rules of Civil Procedure in that it fails to contain a "short and plain statement of the claim showing the pleader is entitled to relief." iCIMS Opp. at 3. It argues that the complaint is so "confusing, ambiguous, and unintelligible" that the defendants cannot respond. Id. at 4. We disagree. While, as we have noted, there are a number of allegations that are improper, vague, and conclusory, we believe that they are of a character that iCIMS should be able to admit or deny (or deny knowledge or information about) the allegations without great difficulty. In other words, the complaint passes muster under Rule 8 even if the allegations may fail to state a claim under Rule 12(b)(6).

Finally, iCIMS argues that "many of the allegations are meritless or time-barred." iCIMS Opp. at 4. iCIMS' brief, however, confines its arguments as to the merits of the claims to a single, brief paragraph and provides only the most cursory argument on this point. See id. As to

15

one claim, it improperly relies on material outside the pleadings. See, e.g., id. (asserting that plaintiff was under 40 years old and thus cannot state a claim for age discrimination). iCIMS also states that its brief gives a "mere sampling" of the deficiencies in the proposed complaint. Id. In light of the cursory and undeveloped manner in which iCIMS presents its arguments as to the merits of any potential motion to dismiss (and thus as to the "futility" of accepting the proposed complaint), we do not find it appropriate to deny leave to amend to add allegations against the iCIMS defendants on the ground of futility. The iCIMS defendants will be free to make such arguments in a future motion, such as a motion to dismiss, or perhaps more efficiently, a motion for summary judgment.

D.     Newly Added Defendants

The proposed complaint would add Comcast and Susquehanna as defendants if allowed. PSAC at 4. While these defendants have not yet been served or appeared, it is plain from the face of the complaint that it states no claims against them and thus the plaintiff should not be permitted to amend the complaint to add these defendants. This is one of those instances where, if the complaint were filed, the Court could appropriately dismiss it immediately upon filing under 28 U.S.C. § 1915(e)(2)(B) on the ground that plaintiff is proceeding in forma pauperis and it is "unmistakably clear that the . . . complaint lacks merit or is otherwise defective." Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 82 (2d Cir. 2018) (citation omitted).

As to Comcast, the only non-conclusory and specific allegations are that it was involved with "DreamIt Ventures" in the period of 2012-2014. PSAC ¶¶ 1-6. Ahmad alleges only that Comcast "backed" DreamIt. PSAC ¶ 5. He does not make any allegations showing that Comcast actually caused him any injury, let alone within any possible period that would not be barred by a relevant statute of limitations. Ahmad does allege that iCIMS hired plaintiff "on the

16

orders of its affiliates [sic] Comcast so that iCIMS and its affiliates could easily and closely monitor Plaintiff." PSAC ¶ 9. These allegations, however, do not state any claim for relief against Comcast. See generally United States ex rel. Hussain v. CDM Smith, Inc., 2018 WL 11217206, at *1 (S.D.N.Y. Jan. 31, 2018) ("[T]he substance of Relator's contemplated amendments is so vague as to preclude application of the Rule 15 standard, thereby rendering amendment futile."). Moreover, it appears that Ahmad lacks standing to assert any claim against Comcast as he has not shown "a causal connection" between any injury to Ahmad "and the conduct complained of." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Thus, the Court lacks subject matter jurisdiction over any claim against Comcast. Finally, there are no non-conclusory allegations that there is personal jurisdiction over Comcast.

As to Susquehanna, the complaint's allegations that mention it are entirely conclusory and/or made in conjunction with allegations against other defendants or unsupported claims of conspiracy that fail to specify what acts Susquehanna specifically engaged in. See PSAC ¶¶ 44, 46, 48-49. It is similarly the case that Ahmad lacks standing to assert any claim against Susquehanna because he has not shown "a causal connection" between any injury to Ahmad "and the conduct complained of." Lujan, 504 U.S. at 560. Thus, the Court would lack subject matter jurisdiction over this claim. Additionally, there are no non-conclusory allegations that there is personal jurisdiction over Susquehanna.

### E. FAA Notice

Finally, Ahmad has filed a document seemingly in conjunction with the briefing of this motion that seeks to challenge the constitutionality of the Federal Arbitration Act ("FAA"). See Not.; Supp. to Not. There is no claim involving the FAA in this case, however. While iCIMS at one point sought to dismiss the complaint on the ground that it was covered by an arbitration

agreement, the Court denied that motion.  See Ahmad, 556 F. Supp. 3d at 215.  As a result, this Court has no reason to make any ruling regarding the FAA inasmuch as federal courts may only "determine actual controversies arising between adverse litigants." Muskrat v. United States, 219 U.S. 346, 361 (1911); accord Whole Woman's Health v. Jackson, 142 S. Ct. 522, 532 (2021).

IV.     CONCLUSION

For the above reasons, the motion for leave to amend (Docket # 168) is granted in part and denied in part.  Ahmad is given leave to file the proposed amended complaint as long as he deletes from the caption and from the list of defendants (on pages 3 and 4) the following defendants: Beacon Hill Staffing Group, naviHealth Inc., Vista Equity Partners, Clay Richards, Susquehanna Growth Equity, and Comcast Corporation.  In other words, plaintiff may file the proposed amended complaint as long as the only defendants named are iCIMS Inc., Colin Day, and Courtney Dutter.  Also, this proposed amended complaint must be filed on or before January 6, 2023.

SO ORDERED.

Dated: December 28, 2022
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge