UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                            :

MAHFOOZ AHMAD,                           :

                        Plaintiff,     :            20-CV-4507 (JMF)

                                 :

           -v-                :          OPINION AND ORDER

                                 :

COLIN DAY, *et al.*,                   :

                                 :

                      Defendants.    :

                                 :
---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Mahfooz Ahmad, proceeding without counsel, brings this case against iCIMS, Inc. ("iCIMS" or "the Company"), iCIMS Chief Executive Officer Colin Day, and iCIMS Deputy General Counsel Courtney Dutter (collectively, "Defendants"), asserting a host of federal and state causes of action arising from events during and after his employment with iCIMS. The Second Amended Complaint makes passing reference to a dozen or so federal and state statutes, but — liberally construed — it alleges three causes of action. *See* ECF No. 188 ("SAC"), 4-8, ¶¶ 1-25. First, Ahmad alleges employment discrimination on the basis of race, religion, and national origin, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, Section 1981 of the 1866 Civil Rights Act ("Section 1981"), 42 U.S.C. § 1981; New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* SAC 4-5, ¶¶ 1-4. Second, Ahmad alleges wage and hour violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* SAC 5, ¶ 6. Finally, Ahmad alleges that Defendants misappropriated his intellectual property and violated the Defend Trade Secrets Act ("DTSA"),

18 U.S.C. § 1836 *et seq*.  SAC 7, ¶¶ 16, 22-23.  Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint for failure to state a claim. ECF No. 197.[1]  For the reasons that follow, Defendants' motion to dismiss is GRANTED.[2]

## BACKGROUND

The following facts, which are taken from the Second Amended Complaint, are deemed to be true for purposes of this motion and construed in the light most favorable to Ahmad.  *See, e.g.*, *Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013).

Ahmad was hired by iCIMS as a Data Migration Specialist in February 2016.  SAC 12, ¶ 10.  He was promoted twice but received only minimal salary increases; his employment later transitioned from in-person to remote.  *Id.* at 12, ¶¶ 10-11.  Sometime thereafter, Ahmad's responsibilities increased: He was required to commute to headquarters periodically without reimbursement and often worked more than forty hours per week without overtime compensation.  *Id.* at 12-13, ¶¶ 12-15, 17.  Additionally, despite knowing that Ahmad is a practicing Muslim, iCIMS managers did not order halal or kosher food on occasions that he

---

[1]    While the parties do not address the issue, the Court notes that Defendants previously filed an answer to the First Amended Complaint.  *See* ECF No. 78 ("Defs.' Answer").  Although Rule 12(b) requires that a party move to dismiss before filing a responsive pleading, courts have generally held that a party may move to dismiss an amended complaint, notwithstanding a prior answer to an earlier complaint, if the amendment added new factual allegations.  *See, e.g.*, *Coppelson v. Serhant*, No. 19-CV-8481 (LJL), 2021 WL 148088, at *3 (S.D.N.Y. Jan. 15, 2021); *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 398 (S.D.N.Y. 2007).  This is especially true when, as here, the earlier answer alleged failure to state a claim as an affirmative defense.  *See Doolittle v. Ruffo*, 882 F. Supp. 1247, 1257 n.9 (N.D.N.Y. 1994); Wright & Miller, Federal Practice and Procedure § 1361 (3d ed. 2020); *see also* Defs.' Answer 5, ¶ 1.  In any event, to the extent that Defendants' motion is untimely under Rule 12(b)(6), the Court may and does treat it as a motion for judgment on the pleadings under Rule 12(c).  *See, e.g.*, *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (holding that conversion "makes eminently good sense" under such circumstances and citing cases).

[2]    In light of that disposition, Ahmad's motions for a preliminary injunction, *see* ECF No. 212, for appointment of *pro bono* counsel, *see* ECF No. 232, to file certain documents under seal, *see* ECF No. 233, and to waive any injunction bond, *see* ECF No. 234, are denied as moot.

visited headquarters with other employees and scheduled calls during compulsory Friday prayer on multiple occasions.  *Id.* 13-14, ¶¶ 13, 18.   Ahmad alleges that, on one occasion, he "was spoken to harshly" after he explained that he needed to reschedule a meeting due to Friday prayers.  *Id.* at 14, ¶ 18.  On May 30, 2018, Ahmad submitted to Day "as an investment opportunity" a pitch deck business plan for a web-based social networking platform he had developed called Jobtrail; after Ahmad did so, iCIMS scheduled meetings to review the business plan.  *Id.* 14, ¶¶ 19-20.  On June 7, 2018, however, his employment was terminated, allegedly in order to deprive him of his intellectual property.  *Id.* at 15, ¶¶ 22-25.

Ahmad alleges that, following his termination, iCIMS "and their affiliates" launched a complex retaliatory scheme to cover up their "illegal and deceptive copying of [his] novel intellectual property invention."  *Id.* at 17, ¶ 33.  The Second Amended Complaint is somewhat fuzzy on the particulars of this plan, making allegations only as to former Defendants naviHealth, Inc. ("naviHealth") and Beacon Hill Staffing Group ("Beacon Hill"), styled as "affiliates" of iCIMS.[3]  *Id.* at 17, ¶ 35.  In essence, Ahmad alleges that in June 2019, a year after he was terminated from iCIMS, he received unsolicited emails from Beacon Hill encouraging him to apply for a position with naviHealth.  *Id.*  Ultimately, he got a job with naviHealth as a Senior Configuration Engineer, a role that required him to implement iCIMS software.  *Id.* Ahmad claims that, as a condition of employment, he was "deceptively lured and induced" into

---

[3]     Ahmad's First Amended Complaint added naviHealth and Beacon Hill as defendants. *See* ECF No. 76.  On June 2, 2022, Magistrate Judge Gorenstein issued a Report and Recommendation recommending dismissal of the Amended Complaint against naviHealth and Beacon Hill for lack of personal jurisdiction and Article III standing, which the Honorable Analisa Torres — to whom this case was previously assigned — adopted shortly thereafter.  *See Ahmad v. Day*, No. 20-CV-4507 (AT), 2022 WL 1814905 (S.D.N.Y. June 2, 2022), *adopted* 2022 WL 2452231 (S.D.N.Y. Jul. 6, 2022).

signing an "Invention Assignment Agreement," after which iCIMS apparently "reverse-engineer[ed]" Ahmad's intellectual property for its own purposes.  *Id.* at 18, 20, ¶¶ 36, 43-44.

## STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See Giunta v. Dingman*, 893 F.3d 73, 79 (2d Cir. 2018).  A court will not dismiss any claims unless the plaintiff has failed to plead sufficient facts to state a claim to relief that is facially plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) — that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  More specifically, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Further, if the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [those claims] must be dismissed."  *Id.* at 570.  Where, as here, a plaintiff brings claims of employment discrimination, however, the facts "alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination.  They need only give plausible support to a minimal inference of discriminatory motivation."  *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

Ahmad is proceeding *pro se* — that is, he is proceeding without counsel.  It is well established that a court is "obligated to afford a special solicitude to *pro se* litigants."  *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010); *accord Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.

2009). Thus, when considering Ahmad's submissions, the Court must interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). Nevertheless, "to survive a motion to dismiss, a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face." *Bodley v. Clark*, No. 11-CV-8955 (KBF), 2012 WL 3042175, at *2 (S.D.N.Y. July 23, 2012); *accord Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) (summary order).

## DISCUSSION

As noted, the Court liberally construes the Second Amended Complaint to allege three sets of claims: employment discrimination claims under federal, state, and local law; wage and hour claims under the FLSA; and misappropriation of intellectual property claims.[4] The Court will discuss each set of claims in turn, but will leave the NYCHRL claims for last.

### A. Employment Discrimination Claims

First, Ahmad brings employment-discrimination claims under Title VII, Section 1981, and the NYSHRL. Courts examine claims under Title VII, Section 1981, and the NYSHRL using the same general standards. *See Torre v. Charter Commc'ns., Inc.*, 493 F. Supp. 3d 276, 284-85 (S.D.N.Y. 2020) (Title VII and NYSHRL); *Awad v. City of New York*, No. 13-CV-5753

---

[4] The Court declines to consider claims raised in the Second Amended Complaint that are wholly without factual support and not addressed in Ahmad's opposition to Defendants' motion to dismiss. *See, e.g., White v. Gutwein*, No. 20-CV-4532 (NSR), 2022 WL 2987554, at *2 (S.D.N.Y. July 28, 2022) ("The Court's duty to construe [a *pro se*] Complaint liberally and favorably is not the equivalent of a duty to re-write it." (internal quotation marks omitted)). The Court also declines to consider claims raised for the first time in Ahmad's opposition, including his First Amendment claims. *See* ECF No. 215 ("Pl.'s Opp'n"), at 26; *see also, e.g., Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (noting that a court may consider new facts raised by a *pro se* plaintiff in opposition "to the extent that they are consistent with the complaint" but that a plaintiff may not raise "entirely new causes of action for the first time" (internal quotation marks omitted)).

(BMC), 2014 WL 1814114, at *5 (E.D.N.Y. May 7, 2014) (Section 1981, Title VII, and NYSHRL).  Under these statutes, "[t]o survive a motion to dismiss, a plaintiff need only establish a *prima facie* case of . . . discrimination by demonstrating that (1) he was within the protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination."  *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (cleaned up).  At this early stage of the litigation, Ahmad must "only give plausible support to a minimal inference of discriminatory motivation"; he need not plausibly allege that "the adverse employment action was attributable to discrimination."  *Littlejohn*, 795 F.3d at 311.  Unlike the other three statutes, however, Section 1981 applies only to claims of intentional racial discrimination.  *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004).

Measured against these standards, Ahmad's claims of employment discrimination — which are based on three categories of allegations — fall short.[5]  The first category of allegations is that he was denied a salary increase despite being assigned the "worst job duties" and "worst work responsibilities."  SAC 12-13, ¶¶ 10-14.  As Defendants correctly point out, however, the Second Amended Complaint is bereft of any allegation that he was paid less well *because* of his race, national origin, or religion.  Defs.' Mem. 21.  Ahmad merely asserts in conclusory fashion that he did not receive as large a raise as other employees, the majority of whom were white.

---

[5]     To the extent that the Second Amended Complaint alleges claims under the Age Discrimination in Employment Act or discrimination based on membership in any other protected class, such claims were not included in, or reasonably related to the claims that were included in, Ahmad's Equal Employment Opportunity Commission complaint, *see* ECF No. 201-2 (noting specifically that the bases for discrimination were creed, national origin, and race/color), and thus would be subject to dismissal for failure to exhaust administrative remedies, *see Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006); *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003).

SAC 12, ¶ 10; *see also* Pl.'s Opp'n 22.  But he fails to plead any facts relating to the conduct and responsibilities of other employees, differences in compensation, or other circumstances tending to demonstrate that he was paid less by reason of his race, religion, or national origin. Accordingly, Ahmad's claims based on a pay disparity fail as a matter of law.  *See, e.g.*, *Servello v. N.Y. State Office of Child. & Fam. Servs.*, No. 18-CV-0777, 2019 WL 974972, at *5 (N.D.N.Y. 2019) (holding that by "fail[ing] to plausibly allege that [his] and [other] employees' duties required substantially equal responsibility, Plaintiff fails to make out an unequal pay claim under . . . Title VII"); *Hughes v. Xerox Corp.*, 37 F. Supp. 3d 629, 645 (W.D.N.Y. 2014) (dismissing an unequal pay claim for failure to identify similarly situated co-workers who were paid more than the plaintiff); *accord Matthew v. Tex. Comptroller of Pub. Accts.*, No. 21-CV-5337 (JPC), 2022 WL 4626511, at *7-8 (S.D.N.Y. Sept. 30, 2022); *Jong-Fwu v. Overseas Shipholding Grp., Inc.*, No. 00-CV-9682 (DLC), 2002 WL 1929490, at *6 (S.D.N.Y. Aug. 21, 2002).

Ahmad's next category of allegations sounds in the hostile work environment arena.  To establish a hostile work environment under Title VII, Section 1981, or the NYSHRL, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Littlejohn*, 795 F.3d at 320-21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *accord Lenart v. Coach, Inc.*, 131 F. Supp. 3d 61, 66 (S.D.N.Y. 2015) (applying the same standards to the NYSHRL claim).  Ahmad's allegations, even taken together, fall short of this rigorous standard.  He contends that his job duties were more burdensome than those of other employees, SAC 12-13, ¶¶ 12, 14-15; *see also* Pl.'s Opp'n 22; that iCIMS failed to provide halal (or kosher) meals when he came into the office and,

further, that iCIMS refused to take into consideration his mandatory prayer times when

scheduling calls, SAC at 13-14, ¶¶ 13, 18; and that, on one occasion, he was spoken to harshly

after he explained that he needed to reschedule a call, *id.* at 14, ¶ 18.  Once again, however, what

dooms Ahmad's claims is what is missing: any allegation that this treatment was "*because* of his

race, national origin, or religion."  *Farooq v. N.Y.C. Health & Hosps. Corp.*, No. 19-CV-6294

(JMF), 2020 WL 5018387, at *9 (S.D.N.Y. Aug. 25, 2020).  Moreover, Ahmad offers only

"[o]ffhand and isolated incidents of offensive conduct," which "will not support a claim of

discriminatory harassment."  *Salas v. N.Y.C. Dep't of Investigation*, 298 F. Supp. 3d 676, 683

(S.D.N.Y. 2018) (internal quotation marks omitted); *see, e.g.*, *Harris v. NYU Langone Med. Ctr.*,

No. 12-CV-0454 (RA), 2013 WL 3487032, at *15 n.19 (S.D.N.Y. July 9, 2013) (noting that the

plaintiff's claim that she "spoke a prayer at work in the presence of her supervisor . . . resulting

in inhumane discipline and discharge," without more, is insufficient to survive a motion to

dismiss), *adopted as modified* 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013); *Brodt v. City of

New York*, 4 F. Supp. 3d 562, 569 (S.D.N.Y. 2014) ("Courts also dismiss religious discrimination

claims when the allegations are too vague to plausibly allege animus.").

    Finally, Ahmad asserts in conclusory fashion that iCIMS "discriminatorily and

unlawfully terminated" his employment.  SAC at 14, ¶ 21.  But, as Defendants point out, *see*

Defs.' Mem. 20, the very same paragraph of the Second Amended Complaint explicitly alleges

that the reason for Ahmad's termination was his proffering of the pitch deck to Day, *see* SAC 14,

¶¶ 20-21.  That is, Ahmad's own allegations undermine any claim that his termination was

caused by discrimination on the basis of race, national origin, or religion.  *See, e.g.*, *Soloviev v.

Goldstein*, 104 F. Supp. 3d 232, 249 (E.D.N.Y. 2015) (granting a motion to dismiss where the

plaintiff had "shown no connection between his termination and his gender, race, or national

origin"); *see also, e.g.*, *Nationwide Mut. Ins. Co. v. Morning Sun Bus. Co.,* No. 10-CV-1777

(ADS), 2011 WL 381612, at *6 (E.D.N.Y. Feb. 2, 2011) ("[Where a plaintiff's] own pleadings

are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory

allegations in the pleadings as true in deciding a motion to dismiss.").

Thus, Ahmad's Title VII, Section 1981, and NYSHRL claims must be and are dismissed.

## B.  FLSA Claims

Ahmad's FLSA claims are almost all time-barred and, regardless, fail to state a claim.  In

general, a statute of limitations is "an affirmative defense that must be raised in the answer."

*Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014).  It is well

established, however, that "a statute of limitations defense may be decided on a Rule 12(b)(6)

motion if the defense appears on the face of the complaint." *Id.* (citing *Staehr v. Hartford Fin.*

*Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)).  That is the case here for nearly all of

Ahmad's FLSA claims.  In general, the statute of limitations for an FLSA claim is two years.

*See* 29 U.S.C. § 255(a); *see also, e.g.*, *Alvarez v. Michael Anthony George Const. Corp.*, 15 F.

Supp. 3d 285, 296 (E.D.N.Y. 2014).  Ahmad filed  his initial Complaint — in which he did

arguably plead an FLSA violation, *see* ECF No. 2, at 5 ("On many occasions I was expected to

work 60+ hours/wk., with no overtime pay.") — on June 11, 2020.  Accordingly, any FLSA

claim based on paychecks prior to June 11, 2018, is time-barred.  *See Nakahata v. N.Y.-*

*Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 198-99 (2d Cir. 2013) ("The cause of action

for FLSA . . . claims accrues on the next regular payday following the work period when services

are rendered[, and] each paycheck represents a potential cause of action.").  Ahmad was

terminated on June 7, 2018, SAC 14, ¶ 21, so, at most, his final pay period would be within the

applicable statute of limitations; any claims based on earlier pay periods are time-barred.

It is true that the statute of limitations for an FLSA claim is "extended to three years" where the violation was willful. *Alvarez*, 15 F. Supp. 3d at 296 (internal quotation marks omitted); *see* 29 U.S.C. § 255(a). But Ahmad does not allege facts in any of his complaints, let alone the operative Second Amended Complaint, to suggest that the alleged FLSA violation was willful. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-33 (1988) (defining "willful" within the context of the FLSA to mean that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute"); *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021) ("[A] plaintiff must allege facts at the pleadings stage that give rise to a plausible inference that a defendant willfully violated the FLSA for the three-year exception to apply."). In the Second Amended Complaint, Ahmad merely states that he had to work over sixty hours a week and/or on weekends with no overtime pay; he does not attribute this extra work or lack of pay to any Defendant, let alone allege that any Defendant was knowingly or recklessly disregarding the FLSA's overtime pay requirements. *See* SAC 13-14, ¶¶ 14, 17. Thus, the two-year statute of limitations applies to Ahmad's FLSA claims.

In any event, substantially for the reasons articulated by Defendants, *see* Defs.' Mem. 10, Ahmad's FLSA claims are wholly conclusory and fail as a matter of law. He alleges that he often worked over sixty hours a week, including on weekends, without overtime pay, SAC 13-14, ¶¶ 14, 17, but he does not provide any specific factual details from which "the Court can reasonably infer that there was indeed one or more particular workweek(s) in which the plaintiff suffered an overtime violation." *Bustillos v. Acad. Bus, LLC*, No. 13-CV-565 (AJN), 2014 WL 116012, at *4 (S.D.N.Y. Jan. 13, 2014); *accord Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) ("[I]n order to state a plausible FLSA overtime claim, a

plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."). The conclusory nature of his FLSA claims thus provides an independent basis for dismissal.

## C. Misappropriation of Intellectual Property Claims

Next, Ahmad brings claims against Defendants for allegedly misappropriating a social networking platform, Jobtrail, that Ahmad allegedly created. *See* SAC 14, 20-21 ¶¶ 19-21, 44-45, 48. What claim Ahmad asserts is not entirely apparent from the Second Amended Complaint, but the most natural fit is for violation of the DTSA.[6] To state a claim under the DTSA, a plaintiff must allege "(1) the existence of a trade secret, defined broadly as information with independent economic value that the owner has taken reasonable measures to keep secret, and (2) misappropriation of that secret, defined as the knowing improper acquisition and use or disclosure of the secret." *Danping Li v. Gelormino*, No. 18-CV-442, 2019 WL 1957539, at *8 (D. Conn. May 2, 2019) (internal quotation marks omitted). Ahmad fails to allege either.

First, Ahmad fails to allege the existence of a trade secret. Under the DTSA, the term "trade secret" includes "all forms and types of financial, business, scientific, technical, economic, or engineering information" if (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic

---

[6]     To the extent that the Second Amended Complaint could be construed to allege claims for copyright, patent, or trademark infringement, the claims would fail as a matter of law for failure to allege ownership of a valid copyright, patent, or trademark. *See* Defs.' Mem. 26-28*; see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (holding that a plaintiff must prove, *inter alia*, "ownership of a valid copyright" in order to establish copyright infringement); *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996) (noting that the first element of most patent infringement cases is "construing the patent," thus presupposing the existence of a patent); *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005) ("In order to prevail on a trademark infringement claim . . . a plaintiff must establish that . . . it has a valid mark that is entitled to protection.").

value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  18 U.S.C. § 1839(3).  Ahmad's admission that he voluntarily shared the relevant information with Defendants without any reasonable measures to protect the secrecy of the information — such as a confidentiality or non-disclosure agreement — is thus fatal to his claim. SAC 14, ¶ 19; *see, e.g.*, *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 424 (S.D.N.Y. 2021) (granting a motion to dismiss a DTSA claim where "Plaintiffs' own allegations in the [complaint] make plain that they failed to take reasonable measures to protect the secrecy of" their trade secrets).  Moreover, Ahmad's purported trade secret is too "vague and indefinite" to be protected.  *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 515 (S.D.N.Y. 2017) (internal quotation marks omitted).  He describes it as a "web based social networking pre release platform," SAC 14, ¶ 20, but does not provide any details as to the actually secret information within his job pitch.  Without that, the operative complaint merely alleges a trade secret "at the highest level of abstraction," which is insufficient to plead a misappropriation claim.  *Lawrence v. NYC Med. Prac., P.C.*, No. 18-CV-8649 (GHW), 2019 WL 4194576, at *5 (S.D.N.Y. Sept. 3, 2019); *see also Elsevier Inc. v. Dr. Evidence, LLC*, No. 17-CV-5540 (KBF), 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) ("[A]lleging that a trade secret exists requires much more specificity as to the information owned by the claimant.").

Second, Ahmad fails to allege misappropriation, as the Second Amended Complaint alleges only that Defendants came into possession of the purported trade secret because Ahmad voluntarily shared it as a purported investment opportunity.  SAC 14, ¶ 19; *see also Kairam v. W. Side GI, LLC*, 793 F. App'x 23, 28 (2d Cir. 2019) (summary order) (affirming dismissal of a DTSA claim where the complaint "lacks any allegation about the circumstances under which" an

alleged trade secret was misappropriated); *Principia Partners LLC v. Swap Fin. Grp., LLC*, No. 18-CV-7998 (AT), 2019 WL 4688711, at *3 (S.D.N.Y. Sept. 26, 2019) (dismissing a DTSA claim where plaintiff fails to plead a breach of a duty of secrecy or confidentiality).  Moreover, Ahmad relies heavily on allegations about the actions of now-dismissed parties — naviHealth and Beacon — to support his misappropriation claim.  *See* SAC 19-21, ¶¶ 42-45, 48, 50.  Ahmad claims without support that these entities are affiliates of iCIMS, but without allegations tending to show some coordination between Defendants and the dismissed parties, this Court is not bound by his conclusory allegation of an affiliate relationship.  *See, e.g.*, *Lopez v. Bonanza.com, Inc.*, No. 17-CV-8493 (LAP), 2019 WL 5199431, at *17 (S.D.N.Y. Sept. 30, 2019) (refusing to credit a plaintiff's "generalized conclusory allegations lumping all 'Defendants' together").

Accordingly, Ahmad's claim under the DTSA must be and is dismissed.

**D.  NYCHRL Claims**

Finally, Ahmad brings employment-discrimination claims under the NYCHRL.  Claims brought under the NYCHRL are subject to a more liberal standard than claims under Title VII and the NYSHRL and, thus, must be analyzed separately.  *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  For instance, "the adverse action need not be material; instead, a plaintiff need only demonstrate differential treatment that is more than trivial, insubstantial, or petty."  *Torre*, 493 F. Supp. 3d at 285 (internal quotation marks omitted).  In light of the distinct standards for NYCHRL claims, and "because the law governing claims under the NYCHRL is still developing, [Ahmad's] NYCHRL claims present questions best left to the courts of the State of New York."  *Maragh v. Roosevelt Island Operating Corp.*, No. 16-CV-7530 (JMF), 2021 WL 3501238, at *10 (S.D.N.Y. Aug. 5, 2021) (internal quotation

marks omitted).  Accordingly, Ahmad's NYCHRL claims — for discrimination and hostile work environment — are dismissed without prejudice to him refiling them in state court.[7]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss must be and is GRANTED, and the Second Amended Complaint is dismissed, without prejudice to refiling the NYCHRL claims in state court.  Ahmad's motions for a preliminary injunction, *see* ECF No. 212, for appointment of *pro bono* counsel, *see* ECF No. 232, to file certain documents under seal, *see* ECF No. 233, and to waive any injunction bond, *see* ECF No. 234, are therefore DENIED as moot.

Further, because the Court previously granted Ahmad leave to amend, *see* ECF No. 187, and Ahmad neither suggests that he has additional facts that would cure the defects discussed above (some of which could not be cured), nor requests leave to amend again, the Court declines to *sua sponte* grant him another opportunity to amend, *see, e.g.*, *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (citing cases); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint.").

---

[7]     The Court notes that there is diversity of citizenship between the parties.  *See* SAC 3, 8-9, ¶ 7.  That said, Ahmad alleges only federal-question jurisdiction, *see id.* at 4-5, ¶¶ 1-2; *id.* at 8, ¶ 1, and does not include any allegations regarding the amount in controversy, let alone that it exceeds the sum or value of $75,000.  Accordingly, the Court cannot exercise diversity jurisdiction over this case.  *See Mavrommatis v. Carey Limousine Westchester, Inc.*, 476 Fed. App'x 462, 467 (2d Cir. 2011) (summary order) (affirming the district court's refusal to exercise jurisdiction over state-law claims because, among other defects, the complaint "fail[ed] to allege any amount in controversy, let alone that it exceeds the sum or value of $75,000").

Finally, the Court certifies, pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this decision would not be taken in good faith, so *in forma pauperis* status is denied.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate ECF Nos. 197, 212, 232, and 233; to enter judgment in Defendants' favor consistent with this Opinion and Order; and to close the case.

SO ORDERED.

Dated: June 6, 2023
      New York, New York

_____
JESSE M. FURMAN
United States District Judge

15